COOLEY LLP
WHITTY SOMVICHIAN (194463) (wsomvichian@cooley.com)
BENJAMIN KLEINE (257225) (bkleine@cooley.com)
LILIA R. LOPEZ (299230) (llopez@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:   (415) 693-2000
Facsimile:   (415) 693-2222

Attorneys for Defendant
TWITTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DOTSTRATEGY, CO., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC.,<br><br>Defendant. | Case No.  3:19-cv-06176-CRB<br><br>**DEFENDANT TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:       July 24, 2020<br>Time:       10:00 a.m.<br>Judge:      Hon. Charles R. Breyer<br>                Courtroom 6 - 17th Floor |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

223261451 v1

DEFENDANT TWITTER, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT -- 3:19-CV-06176-CRB

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ........................................................................................................ 1

I.    STATEMENT OF FACTS ................................................................................................. 4

    A.    Twitter ................................................................................................................... 4

    B.    Twitter's Advertising Program .............................................................................. 4

    C.    The Twitter Rules .................................................................................................. 5

    D.    Plaintiff ................................................................................................................. 6

    E.    Procedural History ................................................................................................ 7

II.   LEGAL STANDARDS ..................................................................................................... 8

III.  ARGUMENT ..................................................................................................................... 8

    A.    Rule 9(b)'s Heightened Pleading Standard Applies Because the FAC Is
          Grounded in Alleged Fraudulent Conduct. .......................................................... 8

    B.    The FAC Must Be Dismissed Because It Does Not Give Twitter Adequate
          Notice of the Basis for Plaintiff's Claim. ............................................................. 9

          1.    Plaintiff fails to specifically allege what is false and misleading about
              Twitter's representations concerning how it would charge self-service
              advertisers. .............................................................................................. 10

          2.    The FAC's nebulous concept of "fake" accounts encompasses
              accounts controlled by human beings, and thus *includes* accounts
              Plaintiff suggests he believed he *would* be charged for. .......................... 11

    C.    Twitter's Advertising Terms Preclude Plaintiff's Claims. .................................. 13

    D.    The FAC Must Be Dismissed Because Plaintiff Fails To Allege Actual
          Reliance On Any Alleged Misrepresentations By Twitter. .................................. 14

          1.    The FAC does not  specifically allege which misrepresentations
               Plaintiff "actually" relied on. ................................................................. 15

          2.    Even if the FAC adequately alleged "actual reliance," Plaintiff could
              not show that such reliance was reasonable. ............................................. 16

    E.    Plaintiff Cannot Establish Standing Under the UCL. .......................................... 17

IV.   CONCLUSION ................................................................................................................ 18

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Arris Cable Modem Consumer Litig.*,
No. 17-cv-1834, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018)....................................................9

*Arroyo v. Chattem, Inc.*,
926 F. Supp. 2d 1070 (N.D. Cal. 2012) ...................................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................................8

*Baba v. Hewlett-Packard Co.*,
No. 09-cv-5946, 2011 WL 317650 (N.D. Cal. Jan. 28, 2011)..................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................8, 18

*Bobo v. Optimum Nutrition, Inc.*,
No. 14-cv-2408, 2015 WL 13102417 (S.D. Cal. Sept. 11, 2015) ..........................................16

*Doe 1 v. SuccessfulMatch.com*,
70 F. Supp. 3d 1066 (N.D. Cal. 2014) ...................................................................................16

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) ...................................................................................................16

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......................................................................................9

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) .................................................................................11

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ..............................................................................................8, 9

*Kwikset Corp. v. Super. Ct.*,
51 Cal.4th 310 (9th Cir. 2011) ........................................................................................14, 17

*Mostowfi v. i2 Telecom Int'l, Inc.*,
269 F. App'x 621 (9th Cir. 2008) ..........................................................................................15

*Resnick v. Hyundai Motor Am., Inc.*,
No. 16-cv-0593, 2017 WL 1531192 (C.D. Cal. Apr. 13, 2017)............................................15

*Samura v. Kaiser Found. Health Plan, Inc.*,
   17 Cal. App. 4th 1284 (1993) ...................................................................................13

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012)...............................................................14, 15

*Spiegler v. Home Depot U.S.A., Inc.*,
   552 F. Supp. 2d 1036 (C.D. Cal. 2008) ..................................................................13

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ...............................................................................8, 9

*Swearingen v. Late July Snacks LLC*,
   No. 13-cv-4324, 2017 WL 4641896 (N.D. Cal. Oct. 16, 2017) ............................17

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ....................................................................................14, 16

*Ebeid ex rel. United States v. Lungwitz*,
   616 F.3d 993 (9th Cir. 2010) ...................................................................................8

*Vess v. Ciba–Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir.2003) ..................................................................................9

**Statutes**

California Business and Professions Code
   § 17200...................................................................................................................1, 7
   § 17204....................................................................................................................17

**Other Authorities**

Federal Rules of Civil Procedure
   8.............................................................................................................................13
   9(b) ................................................................................................................. *passim*
   12..............................................................................................................................7
   12(b)(6) ................................................................................................................1, 8

**TO PLAINTIFF AND TO ITS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 24, 2020 at 10:00 a.m. or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Charles R. Breyer at the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA, defendant Twitter, Inc. ("Twitter") will and hereby does move the Court for an order to dismiss the First Amended Complaint ("FAC") filed by plaintiff dotStrategy, Co. ("Plaintiff"). The FAC alleges a violation of California Business and Professions Code §17200, *et. seq.* This motion is made under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

This motion is made and based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the Declaration of Kelly Huffman, the accompanying exhibits, all pleadings and documents on file in this case, and such additional evidence and argument as may be presented at the hearing on this motion.

## STATEMENT OF RELIEF SOUGHT

Twitter seeks dismissal of the FAC under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## STATEMENT OF ISSUES TO BE DECIDED

Does Plaintiff's FAC fail to state a claim for a violation of California Business and Professions Code §17200, *et. seq.*?

## SUMMARY OF ARGUMENT

Plaintiff's complaint should be dismissed because its scattershot allegations fail to meet the exacting pleading standards for a claim of fraud. The gravamen of Plaintiff's complaint is that Twitter promised not to charge when automated bots engage with advertisements, but did so anyway. While the FAC points to a number of purportedly misleading and deceptive statements by Twitter, it does not allege with specificity, as it must, facts showing that these statements were false or misleading, that Plaintiff reasonably relied on these statements, or that it was harmed as a result. The FAC must therefore be dismissed.

This case involves Twitter's advertising platform, which allows businesses to advertise on Twitter subject to certain terms. Twitter charges advertisers based on different events depending on

Cooley LLP
Attorneys At Law
San Francisco

DEFENDANT TWITTER, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT -- 3:19-CV-06176-CRB

the advertiser's objectives—for example, if an advertiser is promoting its Twitter account, Twitter charges based on the increase in "followers" resulting from the advertising campaign, or if an advertiser is interested in having its app installed, Twitter charges based on the number of installations. When advertisers sign up to use the Twitter platform, they agree both to be charged based on Twitter's measurement of the results of the ad campaign, and that if they disagree with those measurements, they can seek a refund in the form of an advertising credit.

Plaintiff, an advertiser who does not plead that it sought a refund from Twitter, is now suing Twitter to dispute the way that it was charged. Plaintiff states no facts to support a viable claim for multiple reasons. First, Plaintiff fails to explain how the statements cited in the FAC were false or misleading. While Plaintiff identifies what it claims is a false statement—that Twitter only charges when "people" interact with an account—its claim goes much further, seeking compensation for all "fake" activity. Indeed, the vast majority of what is "fake" activity according to Plaintiff's amorphous definitions, *includes activity by real people*. Plaintiff casts its net too broadly. By failing to limit the scope of "fake accounts" to bot activity, Plaintiff's theory expands well beyond the allegedly false statements cited in the FAC. This fails Rule 9(b)'s requirement that Plaintiff plead with particularity statements that can reasonably be linked to its concept of a "fake" account.

Second, Plaintiff's vague allegations regarding *which* alleged misrepresentations Plaintiff relied on and *when* such reliance took place fall well short of the particularity Rule 9(b) requires. Even if Plaintiff had sufficiently pled actual reliance (it has not), Plaintiff would not be able show that any such reliance was reasonable. As the FAC itself makes clear, Twitter has always been transparent about the malicious conduct it combats on its platform. Twitter does not, of course, charge for known bot engagement with advertisements, but Plaintiff fails to identify any statement that would reasonably lead an advertiser to believe that Twitter promised only to charge for engagements by "legitimate," "genuine," "potential customers," as defined by Plaintiff. In fact, Plaintiff, like all self-service advertisers, signed a contract expressly disclaiming such a guarantee.

Third, Plaintiff has failed to allege that it was harmed as a result of Twitter's alleged misstatements. The FAC identifies two accounts that Plaintiff claims were "fake," but fails to allege any facts to support that claim. Plaintiff does not allege that the accounts were suspended because

Cooley LLP
Attorneys At Law
San Francisco

2.

Defendant Twitter, Inc.'s Notice of Motion
and Motion to Dismiss Plaintiffs' First
Amended Complaint–3:19-cv-06176-CRB

they were bots (in fact omitting any alleged reason for the suspensions), despite acknowledging that accounts may be suspended for reasons other than bot activity.  Plaintiff simply alleges no facts to show that it was "wrongly" charged for engagement by these accounts.

In sum, Plaintiff fails to allege any fraud or deceptive practice regarding Twitter's advertising policies because there was none.  If the Court believes Plaintiff's incoherent claims can be salvaged, at the very least Plaintiff should be required to identify, with specificity, the misstatements it believes support each of its claimed categories of "fake" accounts.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   STATEMENT OF FACTS

### A.   Twitter

Twitter operates a "'global platform for public self-expression and conversation in real time. Twitter allows people to consume, create, distribute and discover content and has democratized content creation and distribution.'" (FAC ¶ 3.)  Twitter users primarily engage on the platform through "Tweets," which are short messages.  (*Id.* ¶ 1.)  Users may also elect to "follow" another user's Twitter account which means they subscribe to that account to see the user's Tweets as soon as they are posted. (*See* Twitter Glossary, "follow", https://help.twitter.com/en/glossary (last visited April 20, 2020) ( "Twitter Glossary").)   Twitter's service is free, but customers must agree to Twitter's Terms of Service, which include the Twitter Rules (described below) to use Twitter.  (FAC ¶¶ 1, 4; Decl. of Kelly Huffman in Supp. of Twitter's Req. for Judicial Notice in Supp. of its Mot. to Dismiss Plaintiff's First Am. Compl. ("Huffman Decl.") Ex. A at 2.)  When customers sign up for a Twitter account, they select a username, also referred to as a "handle," which is how they are identified on Twitter.  (*See* Twitter Glossary, "username".)

### B.   Twitter's Advertising Program

Twitter offers advertising services (Huffman Decl. ¶ 2), including a self-service advertising program that allows Twitter users to advertise on Twitter through an automated system.  (*Id.*)  One form of advertising on Twitter is called "Promoted Accounts."  (FAC ¶¶ 25, 26b.)  "Promoted Accounts" allow advertisers to promote their Twitter account to other Twitter users based on a variety of factors, and advertisers are charged when users follow their account because of the campaign.  (*Id.*) Advertisers are not charged for additional followers gained during the campaign if those followers resulted from reasons other than the campaign (for example, if they independently saw the advertiser's account and/or Tweets and followed because of that). Advertisers limit how much they spend on a Promoted Account campaign by determining a budget for the campaign at the outset.  (*Id.* ¶ 30.)

To participate in Twitter's self-service advertising program, advertisers must first become a Twitter user and agree to both the Twitter Terms of Service ("TOS") and Twitter's Master Services Agreement ("MSA").  (Huffman Decl. ¶¶ 2-3.)  Previous versions of the MSA have been referred to

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4.

**DEFENDANT TWITTER, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT–3:19-CV-06176-CRB**

as the Twitter Advertising Terms (the "Advertising Terms").  (*Id*. Ex. B.)

The Advertising Terms in effect as of October 2013 when Plaintiff first placed the advertising in dispute on Twitter (*see* FAC ¶ 36 ) stated that "[t]o the fullest extent permitted by law, [Twitter] disclaim[s] all guarantees regarding [the]. . . quality . . . of . . . any User Actions."  (Huffman Decl. Ex. B ¶ 9.)  The Advertising Terms defined "User Actions" as "impressions, conversions, clicks, Retweets, follows, replies, favorites, blocks or any other actions taken."  (*Id*. ¶ 4.)  The Advertising Terms also provided that "[y]our exclusive remedy, and our exclusive liability, for suspected invalid User Actions, is to make a claim for a refund in the form of Promoted Products credits within the time period required under Section 11 below."  (*Id*. ¶ 9.)  The Advertising Terms explained that "[c]harges are solely based on our [Twitter's] measurements for the Program."[1]  (*Id*. ¶ 11.)

C.     **The Twitter Rules**

The Twitter Rules are Twitter's policies governing the behavior and content allowed on Twitter's platform.  (*See generally* Huffman Decl. Ex. C.)  Importantly, and unlike many other social media platforms, Twitter explicitly permits the use of pseudonyms, including parody, commentary, or fan accounts.  (*Id*. Ex. C at 183.)  Twitter also permits users to operate multiple accounts with distinct identities or purposes.  For example a user may use different accounts for organizations with related but separate chapters, or a user may operate a primary personal account in addition to various pseudonymous accounts or accounts associated with the user's hobbies or initiatives.  (*Id*.)  Twitter also permits the use of third-party applications to control Twitter accounts within certain guidelines.  (*Id*. at 91.)   All such activity can be controlled by humans.  (Huffman Decl. ¶ 4.)

At the same time, Twitter Rules prohibit "spam or other types of platform manipulation."  (Huffman Decl. Ex. C at 180.)  Twitter defines platform manipulation as "using Twitter to engage in bulk, aggressive, or deceptive activity that misleads others and/or disrupts their experience."  (*Id*.)  Platform manipulation can include "commercially-motivated spam" and "inauthentic engagements."  (*Id*.)  This activity is not defined by whether humans or computers are controlling the accounts that engage in it.  (Huffman Decl. ¶ 4.)

If a Twitter account is "of public interest" (e.g., an account of a musician, politician, sports

[1] The Terms defined "Program" as "the Twitter advertising program."  (Huffman Decl. Ex. B at 1.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
5.
DEFENDANT TWITTER, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT–3:19-CV-06176-CRB

figure, or journalist), Twitter may "verify" the account to indicate that it is the authentic account for that individual or entity.  (*Id.* at Ex. E, F.)  Verified accounts are denoted by a blue badge next to the name on an account's profile and next to the account name in search results.  (*Id.*)  Many brands and organizations (but not all) are verified, and the designation has nothing to do with whether an account is linked to a single "real" individual.  (Huffman Decl. ¶ 5.)  Relatively few Twitter users are verified, and the verification program is not open to the general public.  (*Id.*)

Twitter may suspend a user's account if the user violates the Twitter Rules, or for a number of other reasons, such as violating the Twitter TOS, other Twitter policies, or simply prolonged inactivity.  (*See id.* Ex. A at 9.)  The fact of suspension indicates a violation of the TOS only; it does not indicate whether a human or a bot controlled the suspended account.

### D.    Plaintiff

Plaintiff dotStrategy, Co. ("Plaintiff") is a Twitter user and former Twitter self-service advertiser.  (FAC ¶ 36.)  Plaintiff alleges that it advertised on Twitter "[o]ver the period October 2013 through December 2016."  (*Id.* ¶ 36.)   It claims that during this period it placed thirty-four (34) ads for two Twitter accounts, "'@dotstrategy' and '@buzznames.'"  (*Id.*)  According to Plaintiff, all but two of its advertising campaigns were "Promoted Accounts with the objective for obtaining new followers for those accounts."  (*Id.*)  Plaintiff alleges that it conducted Promoted Account advertising campaigns for @dotstrategy on October 16-20, 2013 and November 6-12, 2013 and obtained "a number of followers" during each campaign, including the followers @Dou_Bee and @itsalama.[2]  (*Id.* ¶¶ 42-43, 45-46.)

Plaintiff alleges it was "wrongly" charged for these followers because they are what Plaintiff labels "*fake*" accounts.  (*Id.* ¶¶ 44, 48.)  According to Plaintiff, "fake" accounts encompass: those that "*often take the form of an automated bot*" (*id.* ¶ 9); "*false or spam accounts*" (*id.* ¶ 12); accounts that have not been verified as "*legitimate*" through Twitter's verification process (*id.* ¶¶ 13-14); not associated with "*genuine followers*" (*id.* ¶ 74); not "*genuine Twitter users*" (*id.* ¶ 80); Twitter users

---

[2] If this case proceeds beyond the pleading stage, Twitter intends to show that both the @Dou_Bee and @itsalama usernames were controlled by different Twitter users after the period of Plaintiff's advertising campaigns, including when those different users were suspended.  Their suspensions thus demonstrate nothing about the legitimacy of Plaintiff's advertising charges.

1  who are not "*potential customers*," (*id.* ¶ 76.), and engaged in "*some other form of deception.*" (*Id.* ¶

2  17)(emphases added).  Plaintiff alleges Twitter charged for these "fake" accounts, contrary to its

3  representations that advertisers would "only be charged for interactions with real people." (*Id.* ¶ 2.)

Though the FAC is replete with theories of "fake" accounts, Plaintiff's allegations regarding

5  why @Dou_Bee and @itsalama are "fake" accounts for which it was "wrongly" charged are

6  comparatively scarce.  These facts are necessary to sustain its claim against Twitter.  Plaintiff appears

7  to conclude that because these two accounts were "suspended," (*see* FAC ¶¶ 43, 46), they were "fake"

8  at the time they followed its account, making the per-follow charge it paid illegitimate.  But this

9  conjecture is insufficient to establish standing.  For example, while it is possible that the accounts were

10  suspended for suspicion of bot activity, it is just as likely that the accounts were suspended for violating

11  other Twitter Rules.  It is also possible that the account name itself was abandoned by the original

12  users and adopted by other users well after Plaintiff's advertising campaign.[3]

Plaintiff also fails to allege the basis for its claim that it was "wrongly" charged for these

14  accounts.  Were those charges "wrongful because these "fake" accounts were operated by bots?  Were

15  they "fake" accounts because they were not verified accounts belonging to persons of public interest?

16  Or were they "fake" accounts because for some other reason, they were not "genuine Twitter users,"

17  because (even if human) they were not "potential customers," or because they were involved in "some

18  other form of deception"?  The answers to these questions are fundamental to Plaintiff's claim as they

19  imply drastically different theories of alleged harm: did Twitter improperly charge advertisers for

20  computer-run Twitter accounts; for a Twitter user who operates multiple accounts, one of which it

21  uses under the guise of another person, such as a parody of a public figure; or for a Twitter customer

22  who was not a "potential customer" for Plaintiff's products and services?  The FAC does not make

23  any of these critical allegations that are necessary to support Plaintiff's theory at the pleadings stage

24  that it was "wrongly" charged for the "follow" action of Twitter users that were "fake."

25  **E.    Procedural History**

26  Plaintiff's FAC alleges a single claim for violation of California Business and Professions

---

27  [3] In fact, based on initial due diligence, it appears that is exactly what happened in this case.  Twitter

28  offers this information not to rebut Plaintiff's factual claims with evidence on a Rule 12 motion, but to illustrate the flaws arising from the speculative nature of its allegations.

Cooley LLP
Attorneys At Law
San Francisco

7.

**Defendant Twitter, Inc.'s Notice of Motion and Motion to Dismiss Plaintiffs' First Amended Complaint--3:19-cv-06176-CRB**

1  Code §17200, *et. seq.*  (FAC, ECF No. 58.)  Plaintiff seeks to represent a nationwide class of all

2  persons and entities within the United States who "paid Twitter for Promoted Products based on

3  interaction with fake Twitter Accounts, including but not limited to automated bots."  (*Id.* at ¶ 63.)

4  **II.   LEGAL STANDARDS**

5          A complaint must be dismissed if it does not allege facts sufficient to state a cognizable claim.

6  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6).  The pleading must

7  not merely allege conduct that is "conceivable"; it must plead "enough facts to state a claim to relief

8  that is plausible on its face."  *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

9  A claim is facially plausible when it "allows the court to draw the reasonable inference that the

10  defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  In determining

11  whether a complaint states a plausible claim, the Court need not accept conclusory factual allegations

12  or draw unreasonable inferences.  *Id.* at 678-79.

13          Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule

14  of Civil Procedure 9(b) which requires a plaintiff alleging fraud to "state with particularity the

15  circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120,

16  1124 (9th Cir. 2009).  The purpose of Rule 9(b)'s heightened pleading requirement is "'to give

17  defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that

18  they can defend against the charge and not just deny that they have done anything wrong.'"  *Swartz v.*

19  *KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).  Rule 9(b) therefore requires a

20  plaintiff to identify "'the who, what, when, where, and how of the misconduct charged,'" as well as

21  "'what is false or misleading about [the purportedly fraudulent conduct], and why it is false.'"  *Ebeid*

22  *ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (citations omitted).

23  **III.   ARGUMENT**

24          **A.      Rule 9(b)'s Heightened Pleading Standard Applies Because the FAC Is Grounded**
                    **in Alleged Fraudulent Conduct.**

25          Plaintiff's UCL claim is subject to Rule 9(b) because its theory is rooted in allegations that

26  Twitter intentionally deceived Plaintiff regarding how it would charge advertisers.  Where a plaintiff

27  alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the

28

Cooley LLP
Attorneys At Law
San Francisco                                    8.                    **Defendant Twitter, Inc.'s Notice of Motion**
                                                                       **and Motion to Dismiss Plaintiffs' First**
                                                                       **Amended Complaint–3:19-cv-06176-CRB**

basis of that claim[,] . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns*, 567 F.3d at 1125 (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir.2003));   *Arroyo v. Chattem, Inc*., 926 F. Supp. 2d 1070, 1077-78 (N.D. Cal. 2012) (claim was subject to Rule 9(b) where it invoked the elements of common law fraud) (Breyer, C.).  A claim brought under the "fraudulent" prong of the UCL is always subject to Rule 9(b)'s heightened pleading requirements.  *Kearns*, 567 F.3d at 1125-26.  Allegations of "unfair" or "unlawful" liability are also subject to Rule 9(b) if they form part of a uniform course of fraudulent conduct.  *See In re Google, Inc. Privacy Policy Litig*., 58 F. Supp. 3d 968, 984 (N.D. Cal. 2014) ("If the unlawful conduct is part of a uniform course of fraudulent conduct, it must meet Rule 9(b)'s heightened pleading standards.") (citations omitted); *see also Baba v. Hewlett-Packard Co*., No. 09-cv-5946, 2011 WL 317650, at *5 (N.D. Cal. Jan. 28, 2011) ("[A] plaintiff cannot avoid the requirement of pleading fraud with particularity by restating a claim under the 'unfair' prong of UCL") (citations omitted).

The FAC's allegations under the "fraudulent," "unfair" and "unlawful" prongs all concern Plaintiff's alleged reliance on certain alleged misrepresentations by Twitter in placing advertising on the Twitter platform.  (*Id*. ¶¶ 82, 86.)  Indeed, nearly every single paragraph in Plaintiff's unfair-and-unlawful-prong claims explicitly mentions "deception" or "misrepresentation."  (*See* ¶¶ 79-82 (unfair prong); 85, 87 (unlawful prong).)  Because Plaintiff's allegations assert "'a unified course of fraudulent conduct and rel[y] entirely on that course of conduct as the basis'" for its claim under all three prongs of the UCL, the FAC as a whole is subject to Rule 9(b).  *See In re Arris Cable Modem Consumer Litig*., No. 17-cv-1834, 2018 WL 288085, at *8 (N.D. Cal. Jan. 4, 2018) (claims premised on misleading advertising are subject to Rule 9(b)) (citation omitted).

**B.    The FAC Must Be Dismissed Because It Does Not Give Twitter Adequate Notice of the Basis for Plaintiff's Claim.**

The FAC's failure to limit its definition of "fake" accounts to conduct by bots deprives Twitter of the "'notice of the particular misconduct which is alleged to constitute the fraud charged'" and precludes it from "'defend[ing] against'" Plaintiff's claim.  *Swartz*, 476 F.3d at 764 (citation omitted); Fed. R. Civ. P. 9(b) (plaintiff must "state with particularity the circumstances constituting fraud.").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9.

DEFENDANT TWITTER, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT--3:19-CV-06176-CRB

The FAC does not satisfy these standards because it does not adequately identify what statements lead Plaintiff to believe it would not be charged for each of the categories of alleged "fake" accounts Plaintiff seeks to include in its action.

### 1. Plaintiff fails to specifically allege what is false and misleading about Twitter's representations concerning how it would charge self-service advertisers.

The FAC's confusion is largely rooted in its incoherent notion of a singular, all-encompassing category of Twitter accounts that are "fake." First, Plaintiff refers to Twitter statements to the effect that advertisers would only be charged for activity involving "people" (*see, e.g.*, FAC ¶¶ 38, 39) and states that "fake accounts . . . often take the form of an automated bot" (*id*. ¶ 9). (*See also id*. ¶ 2 (alleging that "fake" accounts are "most often automated").) But Plaintiff does not limit its definition of "fake" to "automated bots." Rather, Plaintiff contends that some accounts controlled by people are "fake," even though the Twitter statements quoted in the FAC refer to charges for activity of "people" without limitation. For example, the FAC alleges that "fake accounts" include "false or spam accounts," but fails to specify what renders an account "*false*" or constitutes "*spam*" in this context. (*Id*. ¶ 12.) The FAC also includes within "false or spam accounts" those controlled by people who interact with ads and are *later* separately found to be in violation of any number of Twitter policies. But charging for such activity—because it is driven by human beings—is consistent with the Twitter policies and statements Plaintiff cites. As a result, Twitter cannot discern what Plaintiff alleges is "deceptive and misleading" (*id*. ¶ 18), about such representations, and defend itself against allegations that those charges are fraudulent.

Compounding the confusion, Plaintiff claims that "fake" accounts also include those that have not been verified as "*legitimate*" through Twitter's verification process[4] (FAC ¶¶ 13-14), those that are not associated with "*genuine followers*" (*id*. ¶ 74), and those that are not "*genuine Twitter users*" (*Id*. ¶ 80). These categories seem to suggest that a "fake" account is defined in relation to some heightened standard of validity beyond being controlled by "people," but Plaintiff does not explain what these standards might be. Nor does Plaintiff identify any Twitter statement promising to charge

---

[4] Plaintiff does not define "legitimate" and Twitter cannot know what Plaintiff means by that in the context of Twitter's verification process, which is discussed further below. *See infra* Section IV(B)(2).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

DEFENDANT TWITTER, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT–3:19-CV-06176-CRB

1    only for activity from these types of accounts.

2        Separately, Plaintiff also bases its notion of "fake" accounts on the propensity of a user to do

3    business with it: "Twitter's misrepresentation [was] that it would display Plaintiff's ad to Twitter users

4    who are *potential customers*."  (*Id*. ¶ 76 (emphasis added).)   The FAC thus forces Twitter to

5    hypothesize about what makes a user a "potential customer," and how such users relate to the other

6    categories of *"people*," "*false or spam accounts*," "*legitimate*" accounts, "*genuine followers*," and

7    "*genuine Twitter users*."   And if all this were not enough, the FAC also claims that "fake" accounts

8    encompass an amorphous catch-all category of "*some other form of deception*."  (*Id*. ¶ 17.)

9        Plaintiff's failure to explain how Twitter's alleged misstatements reasonably encompass each

10   of the categories of "fake accounts" described above does not satisfy the pleading requirements

11   necessary for a claim based in fraud.  *See Hadley v. Kellogg Sales Co*., 243 F. Supp. 3d 1074, 1090

12   (N.D. Cal. 2017) (Rule 9(b) requires "specific factual pleading that indicate why allegedly fraudulent

13   statements are false or misleading.") (citation omitted).  Plaintiff's failure forces Twitter to speculate

14   about the specific types of advertising charges Plaintiff is challenging and what Plaintiff claims to be

15   false or misleading about Twitter's statements.  As a result, the FAC should be dismissed.

16          **2.    The FAC's nebulous concept of "fake" accounts encompasses accounts**
                    **controlled by human beings, and thus *includes* accounts Plaintiff suggests**
17                  **he believed he *would* be charged for.**

18       Plaintiff's concept of "fake" accounts is so bloated that it includes the very types of accounts

19   that Plaintiff concedes Twitter told advertisers they would be charged for—accounts controlled by

20   people.  For example, Plaintiff's vague requirement that an account must be "real" or "genuine" could

21   potentially be construed to exclude pseudonymous and anonymous accounts operated by real people,

22   or multiple accounts controlled by the same person.  But Twitter has always publicly disclosed that it

23   permits such accounts, including at the time that Plaintiff began advertising on Twitter.[5]  Plaintiff has

24   not alleged any misstatement or deception with respect to charges for activity from such accounts.

25   Indeed, Plaintiff itself has operated multiple Twitter accounts, neither of which is under a real person's

26   name.  (*See* FAC ¶ 36) (noting Plaintiff placed ads for the @dotstrategy and @buzznames accounts).

27

28   [5] For example, in October 2013, Twitter's Impersonation Policy explained that Twitter users could
     create "parody, commentary or fan accounts."  (*See* Huffman Decl. Ex. D at 5.)

Similarly, Plaintiff has no viable claim that charges for activity from accounts that have not been verified as "*legitimate*" through Twitter's verification process is inconsistent with any Twitter statements or policies concerning its advertising program.  (*See id.* ¶¶ 13-14.)  Whether an account is verified has no bearing on whether it is appropriate to charge for advertising activity by that account.  Verification indicates that an account is the authentic account of a particular user of "public interest," a category that typically includes users "in music, acting, fashion, . . . religion, journalism, media, [and] sports," but may also include businesses, brands, government agencies, and other high profile non-human entities.  (Huffman Decl. Ex. E, F.)   When individual Twitter users with "unverified" accounts (the vast majority of Twitter accounts) (Huffman Decl. ¶ 5) follow a Promoted Account or engage in other advertising-related activity, it is entirely appropriate for Twitter to charge for those activities.

Even where a Twitter user violates a Twitter policy—which, per the FAC, would presumably render the account "fake" under one or more of Plaintiff's definitions—Plaintiff alleges no statement or omission that could preclude Twitter from charging for that user's advertising-related activity.  For example, if a Twitter user follows an advertiser's Promoted Account and is *later* suspended for violating Twitter policy (for example, by using an improper profile photo), that user's activity would be *consistent* with Plaintiff's alleged understanding that Twitter would charge for the activity of "*real people.*"  (*See e.g.*, FAC ¶ 76).

As noted above, Plaintiff's own advertising campaigns illustrate this issue.  Plaintiff complains it was "wrongly" charged for two followers because these accounts were later "suspended" at unspecified times and for unspecified reasons.  (*See* FAC ¶¶ 43, 46.)  But the fact that these users were suspended at some point after they followed Plaintiff's account does not mean the accounts were "fake" or operated by a bot.  Twitter informs users that there are many reasons an account may be suspended that have nothing to do with it being "fake," let alone with the account being operated by a bot, or non-person.  (*See* Huffman Decl. Ex. A at 9.)  To the contrary, Plaintiff received the precise benefit it bargained for from its Promoted Accounts campaigns—it gained "a number of followers."  (*See* FAC ¶¶ 43, 46.)  Plaintiff suggests, based on general news reports, that because Twitter has suspended accounts for bot activity in the past, these accounts might be automated bots.  (*See id.* ¶

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

DEFENDANT TWITTER, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT--3:19-CV-06176-CRB

43.)   But Plaintiff's speculation is inadequate under even basic Rule 8 standards, let alone the heightened requirements of Rule 9(b) applicable here.[6]   Because of Plaintiff's failure to explain its allegations of fraud with specificity, the FAC should be dismissed with prejudice.

### C.   Twitter's Advertising Terms Preclude Plaintiff's Claims.

Even if activity associated with "fake" accounts (whatever Plaintiff means by that term) were included on Plaintiff's advertising charges, its UCL claim still fails because Plaintiff cannot plausibly allege any deceit by Twitter given that the Advertising Terms to which Plaintiff agreed expressly disclaimed any guarantees about the type of advertising engagements Plaintiff's campaigns might attract.   A UCL claim must be dismissed where the defendant "complied with the express terms of the [parties'] contracts" because the UCL "cannot be used to rewrite [the parties'] contracts or to determine whether the terms of their contracts are fair."   *Spiegler v. Home Depot U.S.A., Inc*., 552 F. Supp. 2d 1036, 1045-46 (C.D. Cal. 2008), *aff'd*, 349 F. App'x 174 (9th Cir. 2009); *see Samura v. Kaiser Found. Health Plan, Inc*., 17 Cal. App. 4th 1284, 1299 (1993) (UCL does not "does not give the courts a general license to review the fairness of contracts . . . .") (citations omitted).

Here, the Advertising Terms to which Plaintiff agreed informed advertisers that "[t]o the fullest extent permitted by law, [**Twitter] disclaim[s] all guarantees regarding [the].** . . *quality* . . . **of . . . any User Actions**"   (Huffman Decl. Ex. B ¶ 9 (emphasis added)), which are defined as  "impressions, conversions, clicks, Retweets, follows, replies, favorites, blocks or any other actions taken."   (*Id*. ¶ 4.) As Twitter explained to advertisers, their "exclusive remedy, and our exclusive liability, for suspected invalid User Actions, is to make a claim for a refund in the form of Promoted Products credits within the time period required under Section 11 below."   (*Id*. ¶ 9.)   Twitter also notified advertisers that, "[t]o the fullest extent permitted by law, you waive all claims relating to charges unless claimed within 60 days after the charge . . . **Charges are solely based on our measurements for the Program.**   To the fullest extent permitted by law, refunds (if any) are at Twitter's discretion, and only in the form of advertising credit for the Program."   (*Id*. ¶ 11. (emphasis added).)   Far from engaging in any deception, Twitter expressly acknowledged that invalid ad engagements may occur on the Twitter platform, and

---

[6] Plaintiff alleges that the screen name for @dou_Bee is "apparently entirely unrelated to the handle, which is another indication it is a fake account" (*id*. ¶ 43), but cites no facts to support this allegation.

Cooley LLP
Attorneys At Law
San Francisco

13.

Defendant Twitter, Inc.'s Notice of Motion
and Motion to Dismiss Plaintiffs' First
Amended Complaint–3:19-cv-06176-CRB

in those instances, advertisers can seek a refund.  Notably, Plaintiff does not allege it ever asked for a refund or a review of its charges through this process.

Twitter's express disclaimer reflects the fact that identifying and combating automated bots and other invalid activity is an ongoing and ever-evolving effort.  Indeed, the FAC repeatedly acknowledges this fact.  (*See* FAC ¶¶ 56-60 (citing news media coverage of Twitter's efforts to remove accounts that violate its policies).)[7]  To be clear, Twitter has a number of internal safeguards designed to identify and weed out automated bots and other invalid engagements.[8]  (Huffman Decl. ¶ 6); (*see* FAC ¶¶ 49, 56-60) (referring to Twitter's efforts to remove suspected spam accounts).)  But the continually evolving nature of invalid activity prevents Twitter from providing any absolute guarantees, and is one of the reasons Twitter provides an appeals process and refunds.  Plaintiff's claim ignores Twitter's "continuous[]" efforts and would impose a guarantee against invalid advertising activity that Twitter expressly disclaims.  The Court should reject this effort to rewrite the Advertising Terms.

### D.  The FAC Must Be Dismissed Because Plaintiff Fails To Allege Actual Reliance On Any Alleged Misrepresentations By Twitter.

Just as the FAC is devoid of specific allegations regarding how Twitter misrepresented the way it would charge self-service advertisers, it also fails to demonstrate Plaintiff's actual reliance on these alleged misrepresentations.  "[A] plaintiff 'proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate *actual reliance* on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions.'"  *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 326-27 (9th Cir. 2011) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009)) (emphasis added).  As such, the "plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct."  *In re Tobacco II Cases*, 46 Cal. 4th at 326; *see In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 970 (S.D. Cal. 2012) (dismissing claim on the basis that plaintiff had already

---

[7] Twitter explained in 2018 that "[i]nauthentic accounts, spam, and malicious automation disrupt everyone's experience on Twitter, and we will never be done with our efforts to identify and prevent attempts to manipulate conversations on our platform."  (Huffman Decl. Ex. G at 1.)

[8] If this case proceeds past the pleading stage, Twitter will show that it does not charge advertisers for known bot activity.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

DEFENDANT TWITTER, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT–3:19-CV-06176-CRB

purchased defendant's product at the time representations were made).

### 1. The FAC does not specifically allege which misrepresentations Plaintiff "actually" relied on.

The FAC fails to allege actual reliance on Twitter's alleged misrepresentations because it does not specify which were the "immediate" cause of Plaintiff's decision to utilize Twitter's advertising program and when Plaintiff viewed those representations.  The FAC dedicates approximately nine pages to reproducing various Twitter statements about its advertising program.  (*See id*. ¶¶ 24-38.) But the majority of these are irrelevant to Plaintiff's claim as a matter of law because they are dated February 19, 2020, and thus post-date Plaintiff's purchase of Twitter advertising services which it alleges occurred "[o]ver the period October 2013 through December 2016." (*Id*. ¶ 36.); *see Resnick v. Hyundai Motor Am., Inc.,* No. 16-cv-0593, 2017 WL 1531192, at *20 (C.D. Cal. Apr. 13, 2017) (no reliance where plaintiff's purchase of defendant's product pre-dated web publication of alleged misrepresentation).

The remaining representations alleged in the FAC are the statements cited in paragraphs 37 and 38, but Plaintiff does not specifically allege ***when*** it viewed these alleged misrepresentations.  The closest Plaintiff gets is that "[o]n or about October 9, 2013, through December 3, 2016, Plaintiff reviewed various representations by Twitter on its Promoted Products, including the representations identified in paragraphs 38 and 39 [sic] above." (*Id*. ¶ 39.)  But a three-year period far from satisfies Rule 9(b)'s requirement that the plaintiff allege "the who, what, when, where and how of the misconduct charged." *Mostowfi v. i2 Telecom Int'l, Inc*., 269 F. App'x 621, 624-25 (9th Cir. 2008) (defendant is "entitled to a coherent presentation of the plaintiffs' theory").  Nor does it support the FAC's only claims regarding specific advertising actions for which Plaintiff believes it was "wrongly" charged.  The only accounts for which Plaintiff alleges it was improperly charged are two followers obtained during advertising campaigns conducted on October 16-20, 2013 and November 6-12, 2013. (*See* FAC ¶¶ 42-43, 45-46) (identifying followers @Dou_Bee (October 2013 campaign), and @itsalama (November 2013 campaign)).  But given that Plaintiff gained these two accounts in October and November of 2013, the 2014 representations Plaintiff cites are irrelevant.  *See In re Sony*, 903 F. Supp. 2d at 970 (dismissing UCL claim where misrepresentation post-dated plaintiff's purchase).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15.

DEFENDANT TWITTER, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT–3:19-CV-06176-CRB

1    Even as to the 2013 representations, Plaintiff does not allege when in 2013 it viewed them, thus the

2    FAC fails to allege that it is anything more than "possible" that the statements are "the immediate

3    cause of [Plaintiff's] injury-producing conduct." *See In re Tobacco II Cases*, 46 Cal. 4th at 326.

4           **2.     Even if the FAC adequately alleged "actual reliance," Plaintiff could not
                      show that such reliance was reasonable.**

5           The reliance standard under the UCL requires that a plaintiff show "members of the public are

6    likely to be deceived" by the business practice or advertising at issue. *Freeman v. Time, Inc*., 68 F.3d

7    285, 289-90 (9th Cir. 1995) (mailers not misleading where they expressly stated conditions required

8    to win and language was not "hidden or unreadably small"); *Doe 1 v. SuccessfulMatch.com*, 70 F.

9    Supp. 3d 1066, 1077 (N.D. Cal. 2014) ("The reliance standard under the UCL . . . is the 'reasonable

10   consumer' test, which requires a plaintiff to show that members of the public are likely to be deceived

11   by the business practice or advertising at issue.") (citation omitted).  "A plaintiff does not state a claim

12   when there is a 'mere possibility' that the statement will be 'misunderstood by some few consumers

13   viewing it in an unreasonable manner.'" *Bobo v. Optimum Nutrition, Inc*., No. 14-cv-2408, 2015 WL

14   13102417, at *5 (S.D. Cal. Sept. 11, 2015) (citation omitted).

15          Plaintiff alleges Twitter's representations, including that advertisers would "only be charged

16   when people follow your Promoted Account" or "[p]ay only when people follow your account" (*see*

17   FAC ¶¶ 37-38), are the basis for its understanding that Twitter would not charge for types of "fake"

18   accounts described in the FAC.  But Plaintiff could not have reasonably relied on any representation

19   by Twitter that it would only pay when "*people*" follow its account to mean that Twitter would screen

20   out activity from all accounts included in Plaintiff's ill-defined concept of "fake."  Plaintiff makes no

21   effort to connect Twitter's statement regarding "people" to activity from accounts that are not

22   "verified," "genuine," "legitimate," or engaged in "some form of deception," for example.

23          Nor is it reasonable to assume that Twitter's statements regarding charges from "*people*" to

24   mean that Plaintiff would never inadvertently be charged for bot activity given that

25   Twitter's policies repeatedly put advertisers on notice that Twitter faced an ongoing challenge in

26   identifying accounts that engaged in spam-like behavior, such as automated bots.  For example, as of

27   October 2013, the Twitter Ads policy instructed advertisers to consult the Twitter Rules for

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16.

DEFENDANT TWITTER, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT--3:19-CV-06176-CRB

information regarding Twitter's spam policy.  (Huffman Decl. Ex. H at 2.)  ("Advertisers should understand and follow all of Twitter's Rules")  The Twitter Rules expressly stated "*we do not actively monitor . . . content.*"  (Huffman Decl. Ex. D at 1.)  Twitter also told advertisers that it "*strives* to protect its users from abuse and spam" but made no guarantees that it could eliminate all such activity on the Twitter platform.  (*Id*. at 2.)    At most, these statements could be interpreted as a promise that Twitter will not charge for known bot-engagement.  But Plaintiff does not claim that Twitter charged advertisers for engagement it knew to be invalid.  Rather, the FAC seeks to transform Twitter's generic policy statements into a guarantee that Twitter would detect, identify, and remove, all bot activity from its platform.  That interpretation is not reasonable under any standard.

## E.    Plaintiff Cannot Establish Standing Under the UCL.

The FAC also warrants dismissal because its convoluted allegations render Plaintiff without standing under the UCL.  To bring a UCL claim, the plaintiff must show it "suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  The plaintiff must therefore "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset*, 51 Cal. 4th at 322.  "[W]here the essence of the claim is based on misrepresentations, 'as a result of' under Section 17204 'means "caused by" and requires a showing of a *causal connection* or reliance on the alleged misrepresentation.'"  *Swearingen v. Late July Snacks LLC*, No. 13-cv-4324, 2017 WL 4641896, at *2 (N.D. Cal. Oct. 16, 2017) (quoting *Kwikset*, 51 Cal. 4th at 326) (emphasis added).  The FAC fails to meet these requirements for multiple reasons.

First, because the FAC does not adequately explain *what* Twitter's alleged unlawful activity is, (*see supra* Section IV(B)), it fails to establish that Plaintiff paid money "*as a result of*" any unlawful activity within the scope of the UCL.

Second, Plaintiff does not show it suffered an "economic injury" at all, let alone one that is causally tied to Twitter's alleged wrongful conduct.  As discussed above, Plaintiff complains that it was charged for two followers whose accounts were later suspended by Twitter (*see* FAC ¶¶ 43, 46), but without alleging any facts to show that these accounts were "fake."  A showing merely that it is

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17.

DEFENDANT TWITTER, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT--3:19-CV-06176-CRB

"conceivable" these accounts were "fake" is insufficient.  *See Twombly*, 550 U.S. at 570 (claims must be "plausible" not simply "conceivable").  Moreover, the fact that these users followed Plaintiff's account gave Plaintiff a publically visible increase in its follower count, which is one of the key purposes of a Promoted Account campaign, and Plaintiff identifies no "economic injury" that it suffered because those accounts were later suspended.  Nor does Plaintiff identify *when* the suspensions occurred.  (*See* FAC ¶¶ 43, 46.)  If the suspensions occurred recently, Plaintiff would have enjoyed the benefit of these two additional followers for several years because they followed Plaintiff's account in 2013.  Indeed, it is not even clear that the currently suspended accounts are associated with the same users who followed Plaintiff's account in 2013 because the same Twitter handle can be used by different users over time.  As a result, the FAC fails to identify economic injury tied to Twitter's alleged wrongful conduct.

Third, even if the FAC did set forth an intelligible theory of how Twitter misrepresented the way it would charge advertisers, Plaintiff does not identify *which* alleged misrepresentations it relied on with specificity, as discussed above, thus failing to establish the "causal connection" UCL requires. *See supra* Section IV(D).  As a result, Plaintiff's failure to show standing under the UCL is an additional basis on which the Court should dismiss the FAC.

**IV.       CONCLUSION**

Plaintiff fails to state a viable claim because it does not identify any fraud, reliance, harm or standing.  These deficiencies in the FAC mandate its dismissal and cannot be cured via good faith amendment.


Dated:  May 4, 2020                              COOLEY LLP


                                                 */s/ Whitty Somvichian*
                                                 Whitty Somvichian (194463)
                                                 Attorneys for Defendant
                                                 TWITTER, INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18.

DEFENDANT TWITTER, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT--3:19-CV-06176-CRB